**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRUMAN FRIERSON,**

                                  **Plaintiff,**

   vs.                                                        1:17-cv-0044
                                                                         (MAD/CFH)

**TROY CITY SCHOOL DISTRICT BOARD OF**
**EDUCATION; ENLARGED CITY SCHOOL**
**DISTRICT OF TROY; JOHN CARMELLO,**
*Superintendent*; **KATHY AHERN,** *Attorney for the*
*Enlarged City School District of Troy*; **JOE MARIANO;**
*Principal of Troy High School*; **PAUL BEARUP,** *Varsity*
*Girls Basketball Coach*; **PAUL REINISH,** *Director*
*of Physical Education for Troy High School*

                                  **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**TRUMAN FRIERSON**
3 Sterling Avenue
Troy, NY 12180
Plaintiff *pro se*

**LEMIRE, JOHNSON & HIGGINS, LLC**       **GREGG T. JOHNSON, ESQ.**
2534 Route 9 - P.O. Box 2485                 **APRIL J. LAWS, ESQ.**
Malta, New York 12020
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Truman Frierson commenced this action against Defendants Paul Bearup, Paul Reinish, Joe Mariano, John Carmella, Kathy Ahern, the Enlarged City School District of Troy (the "School District"), and the Troy City School District Board of Education, alleging both state and federal claims. *See* Dkt. No. 1-1. Presently before the Court is Defendants' motion to dismiss

for failure to state a claim. *See* Dkt. No. 38. For the following reasons, the motion is granted in part and denied in part.

## II. BACKGROUND

Although it is often disorganized and difficult to comprehend, the following facts are derived from Plaintiff's amended complaint. Plaintiff alleges that his daughter ("FD")—a star high school basketball player—was treated unfairly by her coach, Defendant Bearup. *See* Dkt. No. 26 at 13-16. Defendant Bearup allegedly screamed at FD, attempted to disrupt her college recruiting process, and denied her adequate playing time. *See id.* Plaintiff communicated his concerns to the school's principal, the superintendent of the School District, and a number of other school employees, but Plaintiff was not satisfied with their response. *See id.* Eventually, Defendant Reinish, the director of physical education for Troy High School, informed Plaintiff that he would be prohibited from attending future basketball games. *See id.* at 23. Plaintiff's complaint is not entirely clear about the nature or the cause of the ban.

On January 13, 2017, the same day he was informed of the ban, Plaintiff initiated this action. *See* Dkt. No. 1. After the Court granted leave to amend, Plaintiff filed the amended complaint on June 2, 2017. *See* Dkt. Nos. 25, 26. Defendants moved to dismiss the amended complaint, and Plaintiff submitted an incoherent opposition with 103 pages of documents attached as an exhibit. *See* Dkt. Nos. 38, 40.

## III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal

2

sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

3

However, complaints by *pro se* parties are accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.    Pleading Requirement**

In support of their motion to dismiss, Defendants argue that Plaintiff's Complaint fails to conform to the basic pleading requirements of Federal Rule of Civil Procedure 8 ("Rule 8"). Rule 8 requires that "each averment of a pleading shall be simple, concise, and direct" in order to provide the defendant with notice of the claims being brought against him or her. *See* Fed. R. Civ. P. 8. The Second Circuit has stated that

> when a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint. Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance if any, is well disguised.

*Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (citations omitted). "Although courts must give pro se pleadings a liberal construction, 'the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Tafari v. Rock*, No. 10-CV-729, 2012 WL 1340799, *3 (W.D.N.Y. Apr. 18, 2012) (quoting *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004)).

In this case, the amended complaint is not simple, concise, or direct, as required by Rule 8. Instead, Plaintiff's forty-four page amended complaint is incoherent, rambling, and nearly unreadable. Nevertheless, in consideration of Plaintiff's status as a pro se litigant, and in light of the Second Circuit's recent decision in *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017), the

4

Court will address Plaintiff's most discernable claims: that his rights under the First Amendment and the Fourteenth Amendment were violated when he was banned from attending FD's high school basketball games. Plaintiff's remaining claims are dismissed for failure to comply with Rule 8.

**C.     First Amendment**

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). It is "common ground" that the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). A violation occurs only when constitutionally protected speech is restricted, and the government's justification for the restriction is insufficient. *See Frisby v. Schultz*, 487 U.S. 474, 479 (1988).

The Supreme Court has set forth a three-step, forum-based test for determining whether a state actor violated a plaintiff's First Amendment right to free speech. *See Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). A court must determine "(1) whether plaintiff's speech is protected by the First Amendment; (2) the nature of the forum: public, designated or limited public, or nonpublic; and (3) whether the defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard." *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 200 (D. Conn. 2005) (citing *Cornelius* 473 U.S. at 797).

*1. Protected Speech*

5

The First Amendment's protection of free speech, made applicable to the states through the Fourteenth Amendment, extends to a broad range of speech and expressive conduct. *See, e.g., Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Bos.*, 515 U.S. 557 (1995). "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *Perry*, 859 F.3d at 171 (quoting *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937)). Here, Plaintiff had a limited right of access to school property. *See id.* at 173 ("[P]recedents as to whether a parent has a First Amendment right of access to school property are scarce. If such a right exists—and we conclude that in some circumstances it does—it is not limitless"); *see also Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 294 (D. Vt. 2013) ("Members of the public retain First Amendment rights with respect to school property, but only to a limited extent").

*2. Forum Analysis*

The appropriate level of judicial scrutiny depends on the nature of the forum subject to the regulation, although "the same analytical framework applies whether the First Amendment right being exercised is speech . . . or other 'expressive activity' such as assembly." *Perry*, 859 F.3d at 172-73 (citation omitted). The Second Circuit has divided government property into four different categories for the purposes of forum analysis: (1) the traditional public forum, (2) the designated public forum, (3) the limited public forum, and (4) the nonpublic forum. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011).

First, "traditional public fora" are places such as "streets and parks which 'have immemorially been held in trust for the use of the public, and . . . have [generally] been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting

*Hague v. CIO*, 307 U.S. 496, 515 (1939)). "Speech finds its greatest protection in traditional public fora, and government may not alter their public status without completely changing the fora's use, *e.g.* converting a public park to an office building." *Make the Road By Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004). "Content-based restrictions on speech in traditional public fora are subject to strict scrutiny." *Hotel Emps. & Rest. Emps. Union Local 100 of N.Y. v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 545 (2d Cir. 2002) (citations omitted).

The second category, the designated public forum, "'refers to government property which, although not a traditional public forum, has been "intentionally opened up for that purpose."'" *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. 2013) (quotations and citation omitted). Although the government may decide to close a designated public forum, "so long as a forum remains public, government regulation of speech within it 'is subject to the same limitations as that governing a traditional public forum.'" *Make the Road by Walking, Inc.*, 378 F.3d at 143 (quotation omitted).

Third, the limited public forum is often analyzed as a subset of the designated public forum and as a nonpublic forum opened up for specific purposes. *See Byrne v. Rutledge*, 623 F.3d 46, 55 n.8 (2d Cir. 2010) ("[T]he law of [the Second Circuit] describes a limited public forum as both a subset of the designated public forum and a nonpublic forum opened to certain kinds of speakers or to the discussion of certain subjects") (internal quotation marks and citations omitted). A limited public forum is created "'where the government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *Make the Road By Walking, Inc.*, 378 F.3d at 143 (quotations omitted). If expressive activity in a nonpublic forum does not fall within the limited category for which the forum has been opened,

7

then restrictions on speech need only be reasonable and viewpoint neutral. *See Hotel Emps.*, 311 F.3d at 545.

The final category, nonpublic forums, includes all remaining public property that has not been opened to the public for expressive activity. *See id.* (citation omitted). Speech may be restricted in nonpublic fora so long as the restriction is reasonable and viewpoint neutral. *See id.* (citation omitted). "A school is generally considered a nonpublic forum, as it is a property that is not traditionally open to the public for communication." *Johnson v. Perry*, 140 F. Supp. 3d 222, 227 (D. Conn. 2015) (quoting *De Jonge*, 299 U.S. at 364). Accordingly, "the government . . . may limit access or content based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id.* The Supreme Court has held that "no mandate in our Constitution leaves States and governmental units powerless to . . . protect the public from the kind of boisterous and threatening conduct that disturbs the tranquility of buildings that require peace and quiet to carry out their functions, such as courts, libraries, schools, and hospitals." *Carey v. Brown*, 442 U.S. 455, 470-71 (1980).

In this case, the scope of the ban against Plaintiff is not entirely clear from the face of the complaint. However, Plaintiff alleges at least that he was banned from attending his daughter's basketball games at her high school. *See* Dkt. No. 26 at 23. "A school is generally considered a nonpublic forum, as it is a property that is not traditionally open to the public for communication." *DeFabio v. E. Hampton Union Free Sch. Dist.*, 658 F. Supp. 2d 461, 473 (E.D.N.Y. 2009). However, during interschool basketball games, the Troy High School gymnasium was open to the public and was thus a limited public forum. *See Perry*, 859 F.3d at

8

175 ("With respect to interschool basketball games, we think it clear that the Capital Prep gymnasium during such games was a limited public forum").

### 3. Defendants' Justifications

In *Johnson v. Perry*, the Second Circuit faced a set of facts very similar to the facts alleged in this case. Johnson, whose daughter ("JD") was on the girls high school basketball team, was engaged in a dispute with Perry, the school's principal, over JD's role on the basketball team. *See id.* at 161. Johnson accused Perry of bullying JD into staying on the varsity basketball team. *See id.* After a meeting between Johnson and Perry erupted into a heated argument, Perry banned Johnson from all school events on and off campus, with the exception of JD's commencement ceremony. *See id.* at 163. As a result, Johnson was not able to pick JD up from school, attend the final presentation of an academic project, or come to the school's "senior night" celebration. *See id.* at 644. When Johnson attempted to attend school events—either on or off campus—he was removed by security. *See id.* Johnson filed a complaint in the District of Connecticut alleging, among other causes of action, that Perry's actions violated Johnson's First Amendment right of assembly and his due process rights under the Fourteenth Amendment. *See id.* at 164.

Perry moved for summary judgment on Johnson's First Amendment claims, and the district court denied the motion. *Perry*, 140 F. Supp. 3d at 227. The district court held that the school was a nonpublic forum, and that the school could limit access so long as the limits were "reasonable in light of the purpose served by the forum and are viewpoint neutral." *See id.* (quoting *Byrne v. Rutledge*, 623 F.3d 46, 54 (2d Cir. 2010)). But the district court found that there was a disputed issue of material of fact as to whether the ban was reasonable or viewpoint neutral. *See id.* ("[W]hether plaintiff posed a danger to staff and children at the school is a

9

disputed fact. Equally disputed is whether defendant banned plaintiff from school property based on a disagreement with the message plaintiff was conveying").

On appeal, the Second Circuit concluded that although a school is generally a nonpublic forum, a school gymnasium that is open to the public "stands on a different footing" and becomes a limited public forum. *See Perry*, 859 F.3d at 175.[1] Therefore, "unless there is a clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school may regulate access to its gymnasium when it is being used as a limited public forum only if the restrictions are reasonable and viewpoint neutral." *Id.* The Second Circuit went on to affirm the district court's finding that a rational juror could "find that Perry's ban of Johnson from [school] basketball games was neither viewpoint-neutral nor reasonable." *Id.*

At this stage in the litigation, the Court cannot distinguish the facts alleged in the amended complaint from the Second Circuit's holding in *Perry*. As in *Perry*, Plaintiff alleges that his daughter was bullied by a school official, and that he was banned from attending his daughter's basketball games because he complained about the bullying. Drawing all reasonable inferences in Plaintiff's favor, he has plausibly alleged that the ban was not reasonable and viewpoint neutral. Although Plaintiff's First Amendment claim may not ultimately survive a motion for summary judgment, the Court cannot grant Defendants' motion to dismiss based on the allegations in the amended complaint.

---

[1] The Second Circuit divided Johnson's First Amendment cause of action into three different claims: (1) the ban from non-sports events on school property, (2) the ban from sports events on school property, and (3) the ban from all school events beyond school property. *See Perry*, 859 F.3d at 172. The Second Circuit analyzed each of those claims under different standards. In this case, however, Plaintiff alleges only that he was banned from sports events on school property.

10

*4. Qualified Immunity*

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Tracy v. Freshwater*, 623 F.3d 90, 95-96 (2d Cir. 2010) (quoting *Kelsey v. County of Schoharie*, 567 F.3d 50, 60-61 (2d Cir. 2009)). Courts engage in a two-part inquiry to determine whether the doctrine of qualified immunity bars a suit against government officials. *See Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). First, a court must consider whether the facts, construed in favor of the party asserting the injury, "demonstrate a violation of a constitutional right." *See id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, a court must also determine "whether the officials' actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Defendants argue that all claims against individual Defendants should be dismissed because all individual Defendants are entitled to qualified immunity. However, the Second Circuit addressed precisely this issue in *Perry* and ruled that "the right not to be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited was clearly established." *Perry*, 859 F.3d at 176. Therefore, the Court finds that the individual Defendants are not entitled to qualified immunity with respect to Plaintiff's First Amendment claim.

*5. Municipal Liability*

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the

11

municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *accord Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) (holding that under Section 1983 governmental bodies are not vicariously liable for their employees' actions). Where there is no official policy or custom, a plaintiff may still establish municipal liability "if the trier of fact finds that the decision in question was made by a municipal officer who has final authority to establish municipal policy." *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 553 (D. Vt. 2014).

Defendants move to dismiss any claims against the School District on the grounds that Plaintiff failed to show that any injury he suffered was a result of a municipal policy or custom. *See* Dkt. No. 38-1 at 17. However, various school officials—including the superintendent of the School District, the director of physical education, and the attorney for the School District—appear to have been involved in the decision to ban Plaintiff from school basketball games. *See* Dkt. No. 26 at 13-14. Whether or not a superintendent is a final policymaker for the purposes of establishing municipal liability turns on whether the harm that befell the plaintiff was under the superintendent's control. *See T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 374 (S.D.N.Y. 2014). "Conversely, '[w]here the final authority for a particular matter is not within the [superintendent's] control or is subject to review by another official or entity, the [superintendent] is not the final policy with respect to that matter.'" *Id.* (first alteration in original) (quoting *Eldridge v. Rochester City Sch. Dist.*, 968 F. Supp. 2d 546, 562 (W.D.N.Y. 2013)).

12

Here, it is plausible that the superintendent was the final policymaker with regard to Plaintiff's ban.  Additionally, Defendants' motion to dismiss does not address this issue; in fact, Defendants' motion scarcely addresses Plaintiff's First Amendment claim at all.  Therefore, Defendants' motion to dismiss the School District as a Defendant in this case is denied.

**D.    Due Process**

The Court also reads Plaintiff's amended complaint to assert a due process claim.  Once again, the district court's treatment of these issues in *Perry* is instructive.[2]  The district court found that Johnson's ban from all school events except commencement violated "the fundamental right of a parent to make decisions concerning the care, custody, and control of his child."  *Perry*, 140 F. Supp. 3d at 228 (citing *Troxel v. Granville*, 530 U.S. 57, 66 (2000)).  Therefore, the ban deprived Johnson of a "recognized liberty interest."  *Id.*; *see also Troxel*, 530 U.S. at 66 ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by the Due Process Clause includes the righ[t] . . . to direct the education and upbringing of one's children") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 1997)).  In this case, however, the ban against Plaintiff was limited to his attendance of basketball games and did not implicate his fundamental liberty interest in the care, custody, and management of his child.  Accordingly, Plaintiff's due process claim is dismissed.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

---

[2] The Second Circuit did not review the district court's due process finding because the issue was not specifically raised in the defendant's notice of appeal.  *See Perry*, 859 F.3d at 167-68.

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 38) is **DENIED in part** as to Plaintiff's First Amendment claim, and it is **GRANTED in part** as to all of Plaintiff's other claims; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 15, 2018
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge