**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TRUMAN FRIERSON,**

                             **Plaintiff,**

vs.                                             **1:17-CV-0044
(MAD/CFH)**

**TROY CITY SCHOOL DISTRICT BOARD OF
EDUCATION; ENLARGED CITY SCHOOL
DISTRICT OF TROY; JOHN CARMELLO,**
*Superintendent*; **JOE MARIANO;** *Principal of Troy
High School*; **PAUL BEARUP,** *Varsity Girls
Basketball Coach*; **and PAUL REINISCH,** *Director
of Physical Education for Troy High School*,

                             **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**SUSSMAN & ASSOCIATES**                 **MICHAEL H. SUSSMAN, ESQ.**
1 Railroad Avenue, Ste. 3
Goshen, New York 10924
Attorneys for Plaintiff

**LEMIRE, JOHNSON & HIGGINS, LLC**    **GREGG T. JOHNSON, ESQ.**
2534 Route 9 - P.O. Box 2485               **APRIL J. LAWS, ESQ.**
Malta, New York 12020
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Truman Frierson[1] commenced this action against Defendants Paul Bearup, Paul

Reinisch, Joe Mariano, John Carmello, Kathy Ahern, the Enlarged City School District of Troy

---

[1] The parties have, at times, captioned their papers as though Plaintiff brings claims on behalf of his daughter. None of the claims asserted pertain to his daughter's rights, and all remaining claims are his own.

(the "School District"), and the Troy City School District Board of Education (the "Board"), alleging both state and federal claims. *See* Dkt. No. 1. Before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND[2]

During the relevant time, Plaintiff's daughter was a student at Troy High School (the "School"), and Plaintiff and his daughter were familiar with the School District's Athletic Code of Conduct. *See* Dkt. No. 83-26 at ¶ 7; Dkt. No. 86-1 at ¶ 7. On January 3, 2017, Plaintiff's daughter was removed from the girl's varsity basketball game against Albany High School, though the parties disagree as to the reason for this removal. *Id.* at ¶ 8. Two days later, Plaintiff visited the School through the main entrance of the School when it was open. *Id*. at ¶ 9. Plaintiff and Defendant Mariano met that day. *Id*. at ¶ 10.

Plaintiff has not suggested that he had permission from any School official to enter the School or to use any entrance other than the main entrance for visitors. *Id*. at ¶¶ 15-16. Plaintiff entered the School on the evening of January 9, 2017, following his daughter's practice and met with members of the varsity team in the School cafeteria to discuss grievances with the School's basketball program. *Id*. at ¶ 20. This meeting lasted longer than thirteen minutes, despite Plaintiff's earlier testimony that the meeting lasted three-to-five minutes. *Id*. at ¶ 21. Defendants assert that during this meeting, Plaintiff discussed "walking out" during the January 10, 2017 basketball game against Niskayuna High School. *Id.* at ¶ 22. This proposed "walk out" was ostensibly in protest of perceived "abuses" against Plaintiff's daughter and other team members during their time on the varsity team. Defendants have offered that Plaintiff characterizes

---

[2] During review of the entire record for purposes of this motion, the "Reconciled" Statement of Material facts has been particularly helpful to the Court. Dkt. No. 86-1

2

Defendant Reinisch's failure to arrange a public "national letter of intent" signing ceremony for his daughter as "retaliation" and "abuse" but that Plaintiff is not aware of any other student athlete at the School signing with a college below the Division 1 level for whom such a ceremony was held. *Id*. at ¶ 38. Neither Plaintiff nor any other parent with whom Plaintiff spoke met with any Defendant to discuss issues with the varsity basketball program or coaches between January 7, 2017 and January 13, 2017. *Id*. at ¶ 42.

On January 13, 2017, Plaintiff and Defendant Reinisch communicated regarding Plaintiff being allowed to attend athletic events. *Id*. at ¶¶ 23-24. The parties dispute the terminology used, but Plaintiff was in some way "restricted" or "barred" from attending school-related athletic events. *Id*. Plaintiff received a letter from Defendant Reinisch to that effect on January 13, 2017. *Id*. at ¶ 26. Plaintiff has admitted that he possesses no factual information that Defendant Bearup had any involvement with the decision to restrict Plaintiff's attendance at athletic events. *Id*. at ¶ 27.

The School District Board of Education is the legislative and policy-making body of the School District and did not have a policy that mandated, prescribed, or defined circumstances under which a parent would be restricted from attending athletic events. *Id*. at ¶¶ 43-44. Defendants Carmello and Reinisch did not seek the prior approval of the Board of Education before issuing the restriction on Plaintiff's attendance at athletic events and no such resolution or vote by the Board of Education was held to approve the restriction. *Id*. at ¶ 45.

Defendants argue that Plaintiff's claims against Defendants Mariano and Bearup must be dismissed because they were not personally involved in the complained of conduct. They further argue that the First Amendment claims fail as a matter of law since Plaintiff has not established, and cannot establish, any causal relationship between the January 13, 2017 restriction and any

3

protected speech. Further, Defendants argue that the restriction was, in any event, legitimate based upon the undisputed facts. Finally, Defendants contend that each individual Defendant is entitled to qualified immunity and that Plaintiff's claim under *Monell* is baseless.

### III. DISCUSSION

**A.     Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.     First Amendment**

Plaintiff argues that the act of barring Plaintiff from attending all School District athletic events establishes two First Amendment claims: first, that Defendants abridged Plaintiff's limited right of access to school property, thus restraining his right to freely associate with his daughter and others in the school community; and second, a claim of retaliation, implicating Plaintiff's right to associate freely without fear of reprisal by government officials. *See* Dkt. No. 83 at 7.

The Supreme Court has "repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the school." *Tinker v. Des Moines Ind. Comm. School Dist.*, 393 U.S. 503, 507 (1969). Accordingly, "[s]chool officials have the authority to . . . insist that parents and third parties conduct themselves appropriately while on school property." *Madrid v. Anthony*, 510 F. Supp. 2d 425, 437 (S.D. Tex. 2007) (citing *Lovern v. Edwards*, 190 F.3d 648, 655-56 (4th Cir. 1999) (citing *Carey v. Brown*, 447 U.S. 455, 470-71 (1980))). However, where a plaintiff alleges that the First Amendment is violated by a restriction upon attendance at a school-related athletic event, as is the case here, the Court is confronted with a different animal entirely. Such an instance, "stands on different footing, because for such games the school invites the attendance of members of the public." *Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017). "Peace, quiet, and tranquility are not characteristics of, or normally associated with, sports contests." *Id*.

The level of judicial scrutiny applied to state actions that limit speech depends on the nature of the forum in which the speech occurs. *Id*. at 171. In traditional public forums—like streets and parks, which have been held in trust for the use of the public and for the purposes of assembly since time immemorial—the state may not restrict speech on the basis of content unless "necessary to serve a compelling state interest." *Id*. at 172 (quotations omitted). In designated

5

public forums—which are not typically open for public assembly or debate, but which have been affirmatively opened for public discourse—the government constrains itself to the same standards as for traditional public forums. *Id*. A limited public forum is "created when the State 'opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" *Peck ex rel. Peck v. Baldwinsville Central Sch. Dist.*, 426 F.3d 617, 626 (2d Cir. 2005) (quotation omitted).

The Second Circuit has instructed that such sporting events as are at issue here are limited public forums. *Id*. at 175. While there is no broad invitation to disrupt the game or intermissions with political speeches or other issues unrelated to the sporting event, "persons attending the game are expected to engage in expressive activity, chanting and cheering for whichever team they favor." *Id.* Indeed, oftentimes cheerleaders will prompt raucous and sustained demonstrations of school spirit during these events. *See id*. Unless there is a "clear and present danger of disruptions such as disorder, riot, obstruction of the event, or immediate threat to public safety, the school may regulate access to its gymnasium when it is being used as a limited public forum only if its restrictions are reasonable and viewpoint-neutral." *Id.*

Plaintiff argues that the "categorical ban defendants imposed upon [Plaintiff]—even truly aimed at unjustified disruptive speech—necessarily restricted him from engaging in expressive activity for which the forum is opened to the public, such as rooting for his daughter and cheering on her team." *See* Dkt. No. 83 at 13. Like was the case in *Perry*, "with the record taken in the light most favorable to [Plaintiff]," a rational jury could find that Defendants' ban of Plaintiff from all school athletic events was not reasonable or viewpoint neutral. *See Perry*, 859 F.3d at 175. The jury could conclude that despite Defendants' supposed fear of disruption, Plaintiff presented

6

no real threat of disruption or harm, or even that Defendants' motive in banning Plaintiff from the limited public forum was in retaliation for having spoken out against the varsity coach. *See id.*

Defendants argue that this case is distinguishable from *Perry* because the restriction at issue here was not as broad as the one in *Perry* and was narrowly tailored to the legitimate objectives of Defendants Carmello and Reinisch. *See* Dkt. No. 82-23 at 17. Further, Defendants argue that *Perry* does not apply because of the circumstances leading to the restriction or the government's interest giving rise to the restriction. Essentially, they argue that because the restriction had a "legitimate" motivation, that it was proper. The Court finds these arguments unavailing because they do not bear on whether a jury could find, based on the undisputed facts, that the restriction was reasonable or viewpoint-neutral.

A reasonable jury could find that Defendant's ban of Plaintiff from the School's athletic games was neither viewpoint-neutral nor reasonable. *See* Dkt. No. 82-14. The jury could permissibly find that Plaintiff repeatedly complained that his daughter and other players were mistreated, and that Defendants refused to address the concerns. *See generally* Dkt. No. 82-24. The jury could also permissibly find that, because no walkout was actually planned, that Plaintiff presented no threat of disruption or harm, and therefore that such a categorical ban on Plaintiff's attendance was unreasonable. *See* Dkt. No. 82-24 at 4. Finally, a reasonable juror could find the School's objective in restricting Plaintiff's attendance at sporting events was to punish Plaintiff for expressing his concerns about Defendant Bearup's coaching methods. *See* Dkt. No. 83 at 2.

Defendants also suggest that unlike in *Perry* the Court here cannot discern a viewpoint in order to determine whether the restriction was viewpoint-neutral. Defendant is mistaken. The distinctions between these cases do not change the analysis this Court must engage in to determine whether summary judgment is warranted. The fact remains to be determined by a jury

7

whether the restrictions imposed upon Plaintiff by Defendants were reasonable and viewpoint-neutral. From the proximity between Plaintiff's alleged activity and Defendants' ban, a jury could conclude that Defendants intended to silence Plaintiff's viewpoint—the jury could likewise disregard that temporal proximity altogether. Therefore, because there are genuine disputes as to material facts, summary judgment is improper.

**C.    Qualified Immunity**

"The doctrine of qualified immunity shields public officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

> [W]hen a defendant official invokes qualified immunity as a defense in order to support a motion for summary judgment, a court must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory right, and (2) whether that right was clearly established at the time of the alleged violation.

*Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). A constitutional right is "clearly established" when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mollica v. Volker*, 229 F.3d 366, 370-71 (2d Cir. 2000) (quoting *Anderson v. Creiehton*, 483 U.S. 635, 638 (1987) (internal quotations omitted)). Thus, the availability of qualified immunity generally hinges upon the objective legal reasonableness of a defendant's conduct. *Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (citing *Anderson*, 483 U.S. at 639)).

Whether an official's conduct was objectively reasonable is a mixed question of law and fact. *See Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)) (other citations omitted). If there is no dispute as to any

8

material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court. *See id.* at 368 (citation omitted). Any unresolved factual issues, however, must be resolved by the jury. *Id.* (quoting *Kerman*, 374 F.3d at 109) (other citations omitted). Once the court has received the jury's decision as to "what the facts were that the officer faced or perceived," the court must then "make the ultimate legal determination of whether qualified immunity attaches on those facts." *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (quotation omitted); *see also Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quotation omitted). Thus, a defendant is entitled to summary judgment on qualified immunity grounds if he can establish as a matter of law that his actions were objectively reasonable or that the law was not clearly established at the time of the incident. *See Anderson*, 483 U.S. at 641.

Plaintiff alleges that Defendants violated clearly established law by imposing a categorical ban on his attendance at school-related sporting events. *See* Dkt. No. 83 at 21. Defendants argue that because *Perry* was decided six months after the events underlying this case, the law was not clearly established, thus entitling Defendants to qualified immunity. *See* Dkt. No. 82-23 at 19. This is not the case. While *Perry* was in fact decided after the events here, the Second Circuit reasoned it was already clearly established before its holding in *Perry* that a person could not "be excluded, based on viewpoint differences or because of possible annoyance, from sports events to which the public was invited." *Perry*, 859 F.3d at 176. Since the law was clearly established, the Second Circuit held that the defendant's motion for summary judgment based on qualified immunity was properly denied. *Id.*

As discussed above, because Plaintiff's actions did not rise to the level of a clear and present danger, the forum-based approach would apply. *Byrne v. Rutledge*, 623 F.3d 46, 53 (2d Cir. 2010). Here, the School intentionally opened its facilities to the public for school-sponsored

9

athletic events and related speech. *See* Dkt. No. 82-9 at 3. Thus, any restrictions are analyzed under the limited-public-forum analysis because the School opened its facility for a specific expressive purpose. *See Peck*, 426 F.3d at 626; *see also Perry*, 859 F.3d at 175. It is undeniable that by opening the School's athletic facilities for sports competitions, the School created a limited public forum. As such, the School was required to impose restrictions upon Plaintiff that were reasonable and viewpoint neutral. *See Peck*, 426 F.3d at 626. Since questions of fact remain as to the restriction's reasonableness and neutrality, Defendants are not entitled to qualified immunity.

**D.      Defendants Mariano and Bearup**

Defendants correctly point out that personal involvement is a prerequisite to a section 1983 claim. *See Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Plaintiff admits that Defendant Bearup was not personally involved in the decision to restrict him from attending athletic events. Because the Court can find no evidence of Defendant Bearup's personal involvement in the record, summary judgment is granted as to all claims against Defendant Bearup.

Defendants also assert that Defendant Mariano was not personally involved. In opposition, Plaintiff asserts only that Defendant Mariano stated that he could not remember if he "knew of the barment order before it was entered." *See* Dkt. No. 83-26 at ¶ 34. Defendants meanwhile point to substantial deposition testimony stating that Defendants Reinisch and Carmello were the only individuals involved in that decision. *See* Dkt. No. 82-23 at 8. There is no evidence on this record that Defendant Mariano had any personal involvement in the decision to restrict Plaintiff's attendance at athletic events, and Plaintiff has offered nothing more than speculation. Therefore, the Court finds there is no genuine dispute of material fact as to

Defendant Mariano's involvement and grants summary judgment on all claims against Defendant Mariano.

E.     **Claims against the School District under** *Monell*

"Although municipalities are considered 'persons' for purposes of Section 1983, a local government such as [a] County . . . may not be held liable under Section 1983 unless the challenged action was performed pursuant to a municipal policy or custom." *Powers v. Gipson*, No. 04-CV-6338, 2004 WL 2123490, *2 (W.D.N.Y. Sept. 14, 2004) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)). This is because "[m]unicipalities are not subject to Section 1983 liability solely on the basis of a respondeat superior theory." *Powers*, 2004 WL 2123490, at *2; *Harris v. Howard*, No. 08 Civ. 4837, 2009 WL 3682537, *2 (S.D.N.Y. Oct. 30, 2009) ("A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*"). As a result, to demonstrate *Monell* liability, a plaintiff must allege a violation of constitutional rights by employees of the municipality and "(1) 'the existence of a municipal policy or custom . . . that caused his injuries beyond merely employing the misbehaving officer[s]'; and (2) 'a causal connection - an affirmative link - between the policy and the deprivation of his constitutional rights.'" *Harper v. City of New York*, 424 Fed. Appx. 36, 38 (2d Cir. 2011) (quoting *Vippolis v. Vill. Of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)) (internal quotation marks omitted); *see also Harris*, 2009 WL 3682537, at *2 ("In order to plead a claim under 42 U.S.C. § 1983 against a municipality, plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights"). "A plaintiff may plead a municipal policy or custom by alleging: '(1) a formal policy, promulgated or adopted by the entity; or, (2) that an official with policymaking authority took action or made a specific decision which caused the alleged violation of constitutional rights; or (3) the existence of an unlawful practice by subordinate officials that was

so permanent or well settled so as to constitute a "custom or usage," and that the practice was so widespread as to imply the constructive acquiescence of policymaking officials.'" *Shepherd v. Powers*, No. 11 Civ. 6860, 2012 WL 4477241, *9 (S.D.N.Y. Sept. 27, 2012) (quotation and other citation omitted).

However, section 1983 only imposes "liability on a municipality [when] *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Com'rs of Bryan Cnty.*, 520 U.S. 397, 400 (1997) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). The Second Circuit has long "noted the Supreme Court's distinction between *decisionmaking* and *policymaking* authority." *Hurdle v. Bd. of Educ. of City of New York*, 113 Fed. Appx. 423, 426 (2d Cir. 2004) (emphasis in original). The Supreme Court has held that for a municipality to be liable, the decision must be made by an official with final *policymaking* authority, and not simply final decsionmaking authority:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) (internal footnotes and citation omitted); *see also City of St. Louis v. Praprontnik*, 485 U.S. 112, 126-27 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability. If, however, a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose").

Defendant Carmello may very well be a policymaker in some respects, and he was almost certainly a final *decisionmaker* in many respects. However, nothing on this record suggests that in the realm of restricting access to athletic games that he had any ability to independently or finally promulgate any policy on the matter. Determining who may and may not enter school premises or attend school-related events is a discretionary function and does not rise to the level of a municipal policy or custom. Ultimately, Plaintiff "bears the burden of establishing as a matter of law that the conduct of a given official represents official policy." *Hurdle*, 113 Fed. Appx. at 427. After a full review of the record, the Court finds that Plaintiff has not met that burden here, and Defendant Carmello was not a final policymaker. Further, the Court can find no other evidence on this record of an actual policy or custom causing the alleged constitutional violation as promulgated by the Board or any final policymaker. Therefore, summary judgment is granted on the issue of liability under *Monell*.

### IV. CONCLUSION

Upon careful review of the entire record, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED in part**, as to the claims asserted against Defendants Mariano, Bearup, the School District, and the Board of Education, and **DENIED in part**, as to the claims asserted against Defendants Reinisch and Carmello; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 5, 2019
     Albany, New York