UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TRUMAN FRIERSON,

                               **Plaintiff**,

  vs.                                                         1:17-CV-44
                                                                       (MAD/CFH)

PAUL REINISCH, *Director of Physical Education, Health and Athletics*; and JOHN CARMELLO, *Superintendent*,

                               **Defendants**.
_____

APPEARANCES:                                   OF COUNSEL:

**SUSSMAN AND ASSOCIATES**               JONATHAN R. GOLDMAN, ESQ.
1 Railroad Avenue, Suite 3                  MICHAEL H. SUSSMAN, ESQ.
P.O. Box 1005
Goshen, New York 10924
Attorneys for Plaintiff

**JOHNSON LAWS, LLC**                         GREGG T. JOHNSON, ESQ.
646 Plank Road, Suite 205                   APRIL J. LAWS, ESQ.
Clifton Park, New York 12065            COREY A. RUGGIERO, ESQ.
Attorneys for Defendants                     LORAINE CLARE JELINEK, ESQ.

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Plaintiff Truman Frierson commenced this action against Paul Bearup, Paul Reinisch, Joe Mariano, John Carmello, Kathy Ahern, the Enlarged City School District of Troy (the "School District"), and the Troy City School District Board of Education (the "Board"), alleging both state and federal claims. *See* Dkt. Nos. 1, 26. After a series of motions and a qualified immunity appeal, most of Plaintiff's claims were dismissed. In his remaining claims under 42 U.S.C. § 1983, Plaintiff alleged that Defendants John Carmello, the Superintendent for the Troy City

School District, and Paul Reinisch, the Director of Physical Education for Troy High School, violated his First Amendment rights when they placed a restriction on Plaintiff's attendance of future athletic events on January 13, 2017. *See generally* Dkt. No. 26.

A four-day jury trial commenced on September 8, 2020. *See* Dkt. No. 128. On September 11, 2020, the jury returned a verdict in Defendants' favor. *See* Dkt. No. 127. Currently before the Court are Plaintiff's motion for judgment as a matter of law and for a new trial, and Defendants' motion for a bill of costs. *See* Dkt. Nos. 129, 132.[1]

## II. BACKGROUND

The Court assumes familiarity with the underlying facts, which were fully recounted in the Court's prior rulings and at trial. Briefly, on January 9, 2017, members of the Troy High School Girls' Varsity Basketball Team were at the Troy High School for a mandatory practice. *See* Dkt. No. 128 at 34. Plaintiff's daughter was a member of that basketball team and was there for practice. *See id.* Plaintiff, who was not employed by the Troy High School, did not have permission to enter the building on the night of January 9, 2017 and did not seek permission to do so from school officials. *See id.* at 34-35. On that evening, Plaintiff met with members of the basketball team, after the practice had concluded, in the school's cafeteria. *See id.* Although there is video footage of that thirteen-minute meeting, no audio was available. *See id.* According to

---

[1] The Court notes that, in response to Plaintiff's motion, Defendants' counsel submitted a declaration which contains several hearsay statements made by jurors when speaking with Defendants' counsel after the jury had been released. *See* Dkt. No. 134-1 at ¶¶ 4-5. In his reply, Plaintiff argues that these statements should be stricken or otherwise not considered in deciding the pending motion. It is well settled that such statements from jurors, even if submitted in otherwise admissible form, are not properly considered in deciding the pending motions. *See Woods v. Bank of New York*, 806 F.2d 368, 373 (2d Cir. 1986) (holding that the district court properly rejected the defendant's post-trial argument, that was based on counsel's interview with a single juror, because "'[s]uch evidence based on a juror's account of the jury's reasons for its verdict, even if it were not hearsay, is incompetent and cannot be received'") (citing Fed. R. Evid. 606(b)). As such, the Court will not consider these statements in deciding the pending motions.

Plaintiff, at the January 9, 2017 meeting, he discussed some concerns that he and other parents had regarding the Girls' Varsity Basketball Coach, Paul Bearup.

Upon discovering that Plaintiff had entered the building and that this meeting occurred, Defendant Reinisch conducted an investigation on January 10, 2017, that included reviewing the surveillance footage, interviewing one of the students ("M.B.") he recognized from the video of the meeting, and interviewing M.B.'s mother. *See id.* After discussing the matter with Defendant Carmello, on January 13, 2017, Defendants informed Plaintiff that, because of his conduct, he would no longer be permitted to attend home or away sporting events. *See id.* at 106. Plaintiff appealed to Defendant Carmello to reinstate his rights, but the School District's attorney, Kathy Ahern, responded denying his appeal. *See id.* at 135-36.

Plaintiff commenced this action alleging that Defendants violated his various constitutional rights. After motion practice, only two claims remained for trial: (1) violation of Plaintiff's First Amendment right to assembly; and (2) retaliation in violation of the First Amendment. On September 11, 2020, the jury returned a verdict in Defendants' favor on both counts.

### III. DISCUSSION

A. **Standard of Review**

   *1. Motion for Judgment as a Matter of Law Under Rule 50*

Rule 50(a) provides that a court may grant a motion for judgment as a matter of law — *i.e.*, a directed verdict — if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A party may move for judgment as a matter of law under Rule 50(a) "at any time before the case is submitted to the jury." Fed. R. Civ. P.

3

50(a)(2). The moving party "must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.* Although Rule 50(a) does not articulate how specific a motion must be, "the purpose of requiring the moving party to articulate the ground on which [judgment as a matter of law] is sought 'is to give the other party an opportunity to cure the defects in proof that might otherwise preclude him from taking the case to the jury.'" *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998) (quotation omitted). "[E]ven a cursory motion suffices to preserve an issue ... so long as it 'serves the purposes of Rule 50(a), *i.e.*, to alert the court to the party's legal position and to put the opposing party on notice of the moving party's position as to the insufficiency of the evidence.'" *Western Union Co. v. MoneyGram Payment Systems, Inc.*, 626 F.3d 1361, 1367 (Fed. Cir. 2010) (quotation omitted).

Under Rule 50(b), a party may also "file a renewed motion for judgment as a matter of law" after trial. Fed. R. Civ. P. 50(b). In general, the grounds on which a party may rely in a Rule 50(b) motion are "'limited to those grounds that were specifically raised in the prior [Rule 50(a) motion].'" *Galdieri-Ambrosini*, 136 F.3d at 286 (quotation and other citations omitted): *accord Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994) (holding that "judgment as a matter of law is limited to those issues 'specifically raised in [a] prior motion for a directed verdict'") (quotation omitted). A court may only grant a Rule 50(b) motion if there is "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015) (quotation omitted). As the Second Circuit has instructed, "'[t]he motion should be granted only if the court can conclude that, with credibility assessments made against the moving party and all inferences

4

drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party. The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury.'" *Id.* at 112-13 (quotation omitted).

The Second Circuit also recognizes limited circumstances in which a district court may grant a Rule 50(b) motion on an issue that was not previously raised in a Rule 50(a) motion when it is necessary to prevent "'manifest injustice'" or to correct a "'purely legal error.'" *Malmsteen v. Berdon, LLP*, 369 Fed. Appx. 248, 249 (2d Cir. 2010) (quoting *Fabri v. United Techs. Int'l Inc.*, 387 F.3d 109, 119 (2d Cir. 2004)); *see also Cruz*, 34 F.3d at 1155 (holding that "if an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is 'required to prevent manifest injustice'") (quotation omitted). "Manifest injustice exists where a jury's verdict is wholly without legal support." *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (citations omitted).

### 2. *Motion for a New Trial Under Rule 59*

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial may be granted "after a jury trial, for any of the reasons for which a new trial has heretofore been granted in an action at law in federal court." A court must grant a new trial if it determines that the jury's verdict "'is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996) (quotation omitted). "Unlike on a Rule 50 motion, however, on a Rule 59 motion the court 'may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.'" *ING Global*, 757 F.3d at 99 (quotation omitted). However, trial judges "must exercise their ability to weigh credibility with

5

caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' ... and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury[.]'" *Raedle v. Credit Agricole IndoSuez*, 670 F.3d 411, 418 (2d Cir. 2012) (internal and other quotation omitted); *see also ING Global*, 757 F.3d at 99 ("[A] high degree of deference is accorded to the jury's evaluation of witness credibility, and ... jury verdicts should be disturbed with great infrequency"). When a party challenges a verdict under Rule 59(a) on the ground that it was against the weight of the evidence, a court may grant the motion only if the verdict is (1) "'seriously erroneous'" or (2) "'a miscarriage of justice.'" *Id.* at 417-18 (quotation and other citation omitted).

B.    Application

   *1. First Amendment Freedom of Assembly*

The First Amendment prevents the government from "abridging the freedom of speech, or freedom of the press," and assures "the right of the people peacefully to assemble." U.S. Const. amend. I. "The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. Oregon*, 299 U.S. 353, 364 (1937); *see also Wolff v. Selective Serv. Local Bd. No. 16*, 372 F.2d 817, 822 (2d Cir. 1967). "The First and Fourteenth Amendments do not permit [the government] to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people." *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971). On the other hand, "[n]othing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 799-800 (1985).

To determine whether the government's attempts to restrict constitutionally-protected activities is prohibited by the First Amendment, "the level of scrutiny to which the restriction is subjected depends on how the property is categorized as a forum for speech." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 880 F. Supp. 2d 456, 469 (S.D.N.Y. 2012). In the Second Circuit, there are four classifications of government property: (1) traditional public fora, (2) designated public fora, (3) limited public fora, and (4) nonpublic fora. *See R.O. ex rel. Ochshorn v. Ithaca City Sch. Dist.*, 645 F.3d 533, 539 (2d Cir. 2011). Once the court determines the forum, it "then applies the requisite standards for that forum to the challenged speech restriction." *Am. Freedom Def. Initiative*, 880 F. Supp. 2d at 469.

Relevant here, when a school opens itself up to the public for activities such as sporting events, it becomes a limited public forum. *See Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017). In a limited public forum, content-based restrictions on speech or speakers within the designated category for which the forum was opened are subject to strict scrutiny, whereas restrictions on speech or speakers outside the designated category need only be reasonable and viewpoint neutral. *See Hotel Emps. & Rest Emps. Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534, 545, 553 (2d Cir. 2002). Additionally, in a limited public forum, "the government may impose content-neutral time, place, and manner restrictions on speech within the designated category for which the forum has been opened so long as those restrictions are 'narrowly tailored to serve a significant government interest and leave open ample alternative channels of communications.'" *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014) (quoting *Make the Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004)).

At trial, both Defendants testified that, during their lengthy careers as administrators with

7

the School District, they have only restricted parents from attending athletic events in those extreme circumstances where a parent's behavior directly threatened the well-being of student athletes. Further, the evidence at trial established that Plaintiff's conduct on January 9, 2017 violated the School District's security procedures, visitor's policy, Building Use Policy, and the Code of Conduct for all athletes and parents. *See* Dkt. No. 128-1 at 120-23.

Additionally, the jury was presented with substantial evidence at trial from all witnesses who were involved in the investigation of Plaintiff's January 9, 2017 misconduct and the decision to restrict his access from future School District athletic events. These witnesses consistently testified that, (1) to the extent that they were even aware of Plaintiff's criticisms of Coach Bearup, Defendants responded positively by meeting with Plaintiff and offering to set up a meeting with him and his daughter; (2) countless parents of student athletes engaged in the same critical behavior that Plaintiff engaged in without any consequences from Defendants; (3) with the exception of the coaching critique Plaintiff offered to Defendant Carmello on January 5, 2017, neither Defendant was even aware of the content of Plaintiff's unspecified "speech;" and (4) there was never any discussion or consideration by Defendants about taking adverse action against Plaintiff until **after** Defendants discovered that Plaintiff had trespassed into one of School District's buildings on January 9, 2017, engaged in inappropriate behavior with members of the Girl's Varsity Basketball Team, which is what prompted Defendants to take action. It was Plaintiff's burden to offer evidence, not speculation or arguments by counsel, that there was a causal connection between his speech or the content of his speech and the restrictions.

As Defendants note, when Plaintiff's counsel called Defendant Reinisch to the stand during Plaintiff's case-in-chief, he never questioned him about what speech by Plaintiff he was aware of before imposing the restriction on Plaintiff, how he tailored the restriction, or what

motivated the restriction (beyond confirming the content of the January 13, 2017 letter. During cross examination, however, the jury was shown the surveillance video of Plaintiff's January 9, 2017 behavior and heard Defendant Reinisch's testimony regarding these material issues. Defendant Reinisch testified that he first viewed the video of Plaintiff meeting with the Girl's Varsity Basketball Team on January 10, 2017, and that it was sent to Defendant Carmello later that day.  *See* Dkt. No. 128-1 at 87-89.  Initially, Defendant Reinisch testified that he found it "unbelievably inappropriate" that Plaintiff "parked right in front of the girls' locker room" waiting for the players to exit.  *See* Dkt. No. 132-2 at 285.  Moreover, when asked why he decided to prohibit Plaintiff from attending future sporting events, Defendant Reinisch again testified that his decision was based solely on Plaintiff's behavior on January 9, 2017.  Specifically, Defendant Reinisch testified as follows: "So when I saw what went on in that video, I had never seen anything like that.  And for a parent to come into a building after hours uninvited and to assemble certain members of the team, not the whole team, and to do it where he did.  He went in the back hallway. ...  And to park himself right outside the girls' locker room, like the whole thing was inappropriate, beyond acceptable, and no time did I think anything less than he is – we have to remove the team from him." *Id.* at 300-01.  Defendant Reinisch also stated that his investigation led him to the conclusion that Plaintiff was "a threat to the wellbeing of student athletes." *Id.* at 301.

      Defendant Carmello testified that seeing the video of Plaintiff on January 9, 2017 is what motivated his decision to issue the restriction on Plaintiff.  Specifically, Defendant Carmello testified that "[w]e needed to make sure that our athletes and all of our students are safe and secure at all times.  I did not want to give Mr. Frierson any further access on school grounds or at any games where the students needed to be.  They're a captive audience.  I didn't want him to have

another opportunity to exploit those young women." Dkt. No. 132-2 at 369. Defendant Carmello also described how his viewing of the surveillance video depicting Plaintiff's January 9, 2017 behavior and seeing his own son walk through the cafeteria while Plaintiff was meeting with the Girls Varsity Basketball Team impacted his thinking: "seeing my son there made me realize that all the students in that cafeteria and school district rely on me to keep them safe and that the parents of those girls, just like me as a parent ... had no idea that they were having that meeting with Mr. Frierson at that time." *Id.* at 370.

As Defendants note, one of the flawed themes running throughout Plaintiff's motion is his focus on "the disruption of basketball games" and his attempt to minimize the actual impact his January 9, 2017 behavior had and the threatening manner it was perceived by Defendants. As noted above, M.B.'s mother testified at trial that when her daughter arrived home after the January 9, 2017 meeting, she "was very upset. She's extremely sensitive and aware of conflict. This caused her a lot of stress." Dkt. No. 132-2 at 384. She further testified that M.B. continued to experience stress from that meeting for "[t]he rest of senior year and beyond." *Id.*

Based on the facts presented at trial, the Court finds that the jury reasonably concluded that Defendants' decision to restrict Plaintiff's access to future school sporting events was reasonable and viewpoint neutral. *See Johnson*, 859 F.3d at 175. The Court gave both sides a full and fair opportunity to air their grievances to a jury, which eventually sided with Defendants. Because Plaintiff has failed to establish any grounds for post-trial relief, the motion for a trial new or for judgment as a matter of law must be denied as to this claim.

### 2. *First Amendment Retaliation*

"To establish a case of retaliation in violation of the First Amendment, a plaintiff must demonstrate that: (1) he engaged in protected conduct; (2) the defendant took adverse action

10

against him; and (3) there was a causal connection between the two." *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011) (citing *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)); *see also Montero v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, ___U.S.___, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Monroe*, 547 U.S. 250, 259, 126 S. Ct. 1695, 164 L. Ed. 2d 441 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured — the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260, 126 S. Ct. 1695).

In the present matter, the Court finds that the evidence at trial was sufficient to support the jury's verdict and Plaintiff's motion must be denied. At trial, Plaintiff attempted to establish causation based in part on the temporal proximity between his attempts to get the players to boycott an upcoming basketball game on January 9, 2017, and the restriction that was imposed only four (4) days later. As discussed above, however, the evidence at trial established that Defendants only took action against Plaintiff after an investigation into his misconduct was completed and it was determined that he had engaged in inappropriate conduct and violated various School policies. Moreover, at trial, Plaintiff introduced evidence that indicated that he had been complaining to School officials for at least the preceding year about issues he had regarding Coach Bearup. *See* Dkt. No. 132-2 at 163-64. In an email to Defendant Carmello on January 5, 2017, Plaintiff wrote the following: "At the direction of my attorneys, I'm sending you this letter for an opportunity to address the situation. As attempts to have a meeting for resolve **since this time last year** have gone on deaf years [sic] resulting in continued retaliatory tactics on

11

my daughter Shalie Frierson, the continuing malicious, denigrating, and abusive attacks on my daughter by Paul Bearup are dehumanizing, demoralizing, and deplorably unconscionable." *Id.* (emphasis added).  The fact that Plaintiff had been engaged in similar expressive activity for the year leading up to January 13, 2017, supports the jury's conclusion that Defendants' actions would have been taken absent any retaliatory motive.

As discussed, the jury heard testimony from the remaining Defendants and several non-party witnesses regarding the events that transpired and the motivation behind Defendants' decision to ban Plaintiff from sporting events.  Summary judgment was denied as to the remaining claims and Defendants because questions of fact remained and could be resolved only through credibility determinations by a jury.  Based on the evidence presented, the jury reasonably concluded that Defendants did not retaliate against Plaintiff in violation of his First Amendment rights.  As such, the Court finds that Plaintiff's motion for a new trial or for judgment as a matter of law must be denied.

**C.    Taxation of Costs**

Defendants submitted a bill of costs, seeking to tax costs of $3,129.87, broken down as follows: (1) notice of appeal fee of $505.00; (2) costs for deposition transcripts of $2,165.75; (3) costs for printing appeal papers of $406.00; and (4) a trial witness fee of $53.12.  *See* Dkt. No. 129.  Plaintiff objects to the taxation of the notice of appeal fee, the costs of printing the appellate papers, the cost of certain deposition transcripts, and part of the trial witness fee.  *See* Dkt. No. 133.  Defendants have not responded to Plaintiff's objections.  As set forth below, Plaintiff's objections to the bill of costs are sustained in part, and Defendants are awarded costs in the amount of $1,593.56.

   *1. Standard*

Federal Rule of Civil Procedure 54(d)(1) provides that, in the usual case, "costs — other than attorney's fees — should be allowed to the prevailing party" in a lawsuit. Fed. R. Civ. P. 54(d)(1). As relevant here, "costs" include the following items: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; [and] (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(1)-(4). The "party seeking costs bears the burden of establishing that each expense it seeks to recover 'fall[s] within an allowable category of taxable costs.'" *Endo Pharmaceuticals Inc. v. Amneal Pharmaceuticals, LLC*, 331 F.R.D. 575, 578-79 (S.D.N.Y. 2019) (quotation and other citation omitted).

### 2. Appellate Costs

In this case, after this Court denied Defendants' motion for summary judgment, Defendants filed an interlocutory appeal arguing that they were entitled to qualified immunity. The Second Circuit denied Defendants' appeal and remanded the matter for trial. *See Frierson v. Reinisch*, 806 Fed. Appx. 54 (2d Cir. 2019). Since Defendants' appeal was unsuccessful, Plaintiff argues that Defendants should not be permitted to recover the costs they incurred in taking the appeal. *See* Dkt. No. 133 at 3. The Court agrees.

Rule 39 of the Federal Rules of Appellate Procedure provides that "if a judgment is affirmed, costs are taxed against the appellant[.]" Fed. R. App. P. 39(a)(2). Since Defendants were the appellants before the Second Circuit and the judgment was affirmed, they are not entitled to recover the costs they incurred in taking their unsuccessful appeal. As such, the Court will not award the requested $505.00 for the notice of appeal or the $406.00 for printing costs associated with the appeal.

### 3. Deposition Transcript Costs

Defendants seek to recover $1,344.25 for the deposition transcripts of Plaintiff and his daughter. According to the Northern District of New York Guidelines, "[o]nly the cost of one transcript is taxable[.]" The invoice Defendants submitted to support this claimed cost states that it is for the deposition of both Truman and Shalie Frierson and that "[e]nlcosed is original and one copy of each transcript (275 x $4.75 plus WI)." Dkt. No. 129 at 7. Plaintiff notes that the invoice does not state how much is charged for the original of each transcript and how much for the copy of each. *See* Dkt. No. 133 at 4. Since Defendants may not recover for costs for multiple copies of the same transcript and their own submission makes it unclear what they were charged for each copy beyond the original, Plaintiff argues that Defendants have failed to meet their burden and the Court should disallow the entire charge. *See id.* Alternatively, Plaintiff argues that this claim should be reduced by a reasonable amount to reflect the cost of the additional copy of each transcript. *See id.* Plaintiff suggests that the Court should use the invoice for the remaining depositions that Defendants purchased as guidance. *See id.* (citing Dkt. No. 129 at 6). That invoice, which was for a single copy of the four depositions noticed by Plaintiff, reflects a per page rate of $2.25. *See id.*

Having reviewed the parties' submissions and the applicable law, the Court declines to completely disallow this cost. Rather, the Court finds that Defendants should only recover $2.25 per page for the cost of these transcripts, which was the rate charged for a single copy of the depositions noticed by Plaintiff. As such, Defendants are awarded $618.75 for the cost of the depositions of Plaintiff and Shalie Frierson.

### 4. Trial Witness Fee

As Plaintiff notes, there was a clerical error in Defendants' request for $53.12 in witness

fees. Defendants appear to have double counted the mileage component of this fee ($6.56 for mileage of 11.4 miles). *See* Dkt. No. 129 at 2. The applicable statute allows only $40.00 per day for witness fees, plus mileage. *See* 28 U.S.C. § 1821. Defendants' remaining supporting documentation submitted with their application demonstrates that they actually paid a total of $46.56, consisting of $40.00 for the attendance fee and $6.56 for mileage. As such, to correct this error, the Court awards $46.56 as fees for witnesses.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Plaintiff's motion for judgment as a matter of law or, alternatively, for a new trial (Dkt. No. 132) is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for a bill of costs (Dkt. No. 129) is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Defendants are awarded costs in the amount of **$1,593.56**, as set forth in this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 27, 2021
Albany, New York

Mae A. D'Agostino
U.S. District Judge